UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL FLEMING,

                Plaintiff,

v.

KENNETH MCINTYRE, et al.,

                Defendants.

_____/

Case No. 1:25-cv-136

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues the following ICF medical personnel in their individual and official capacities: Registered Nurse Kenneth McIntyre, Registered Nurse Ruth Bartlett, Nurse Eileen Cannon, Registered Nurse Deborah Jones, Registered Nurse Anna Stamper, and Registered Nurse Unknown Fosburg.  (Compl., ECF No. 1, PageID.1, 2–3.)

In Plaintiff's complaint, he alleges that on March 21, 2022, he was transferred from the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan, to the Duane Waters Prison Hospital for physical therapy.[2]  (*Id.*, PageID.6.) Plaintiff states that he "was given a packet with a bunch of different stretches to do for [his] back," and he "was told by the therapist that if [he] had any problems or no improvement to follow up with healthcare."[3]  (*Id.*)  On April 21, 2022, Plaintiff had an appointment with a non-party physician assistant at MRF, and Plaintiff told the physician assistant "that in 2005, [he] had a roofing job and fell off a ladder landing in a scorpion position."  (*Id.*)  The next day, April 22, 2022, Plaintiff was exercising,

---

[2] It appears that Plaintiff sets forth this information about his incarceration at MRF to provide context for his claims regarding events during his incarceration at ICF. As such, the Court does not construe Plaintiff's complaint to raise claims regarding the events that occurred during his incarceration at MRF.

[3] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's complaint.

and he "started feeling sharp lower back pains." (*Id.*) Plaintiff returned to his

housing unit and submitted a healthcare kite. (*Id.*) Thereafter, on April 28, 2022,

Plaintiff had an appointment "for [his] back pain," and his "Naproxen was

discontinued and Prednisone was prescribed on a trial basis for possible sciatica."

(*Id.*)

On September 19, 2022, Plaintiff was transferred from MRF. (*See id.*,

PageID.8.) On October 1, 2022, Plaintiff submitted a healthcare kite at ICF,[4] stating:

> For almost two years, I've been in pain and it just keeps getting worse;
> all my joints hurt like crazy. I've been on Prednisone anti-inflammatory
> [medication] and now Motrin; this is a continuing issue. I've literally ate
> 50 Motrins this last week and they don't do much of anything. My
> kidneys and liver are starting to hurt from all the Motrin. I was
> scheduled to see [the] Dr. on the 29th, was told by nurse, but maybe that
> was not entirely true. I realize I just arrived at this facility but this is
> an MDOC issue and from now on I will just start writing grievances and
> report to Lansing. I'm sick of being bedridden because of this issue.
> Something has to change and be done about this. I was also scheduled
> for [a] CT scan at MRF, but they probably lied too. Thank you.

(*Id.*, PageID.6–7 (removing "(sic)," which Plaintiff used to note his misspellings,

because the Court is correcting the spelling in quotations from Plaintiff's complaint).)

On October 3, 2022, Defendant McIntyre responded to Plaintiff's healthcare kite

---

[4] In the complaint, Plaintiff indicates that he "rode out [from MRF] on 9-19-22";
however, Plaintiff does not indicate whether he was immediately transferred to ICF
or whether he was transferred to a different prison prior to ICF. (Compl., ECF No. 1,
PageID.8.) According to the MDOC's Offender Tracking Information System (OTIS),
on November 29, 2023, Plaintiff was sentenced by the Macomb County Circuit Court
after pleading *nolo contendere* to second-degree murder, which he committed on
September 17, 2022, while he was incarcerated at MRF. OTIS,
https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=802151 (last
visited Apr. 4, 2025). Plaintiff indicates that he submitted a healthcare kite at ICF
on October 1, 2022, so Plaintiff either arrived at ICF immediately following his
transfer from MRF on September 19, 2022, or he arrived at ICF shortly before
October 1, 2022.

indicating that McIntyre would schedule an evaluative appointment for Plaintiff and advising Plaintiff not to take "more than the prescribed amount of any medication." (*Id.*, PageID.7.)

On October 13, 2022, Plaintiff submitted another healthcare kite, asking when he was scheduled to see the doctor, when he "was eligible to order Excedrin and Motrin," and "for a refill of [his] calcium carbonate." (*Id.*) Non-party Julie White responded to Plaintiff's kite, indicating that "no appointment [was] scheduled" and that if Plaintiff "need[ed] to be seen, [to submit a] kite [to] nursing." (*Id.*) Ms. White also advised Plaintiff that his calcium carbonate prescription had expired on July 19, 2022, that he had received his supply of Excedrin on September 30, 2022, and that "Ibuprofen [was] requested from pharmacy." (*Id.*) Plaintiff alleges that Ms. White's response about the doctor's appointment "means [Defendant] McIntyre never scheduled an appointment with a doctor like he said he did on 10-3-22." (*Id.*)

On November 5, 2022, Plaintiff submitted a healthcare kite noting that while he was at MRF, he was being treated "for possible arthritis throughout [his] body and was scheduled for a CT scan to see how bad it was." (*Id.*) Plaintiff also noted that he believed "we need to continue this ASAP, as [his] mobility [wa]s limited and [he was] in constant pain." (*Id.*) That same day, Defendant Bartlett responded to Plaintiff's kite, stating that there was "no indication of arthritis in [Plaintiff's] health summary," and that Plaintiff had been "treated for sciatica and had physical therapy in March of 2022." (*Id.*) Defendant Barlett advised Plaintiff to do his "stretching exercises daily to improve [his] flexibility and mobility" and that he had "a

6

prescription for ibuprofen" for his pain.  (*Id.*)  On November 13, 2022, Plaintiff submitted "three healthcare kites that never got responded to" regarding his pain. (*Id.*, PageID.8.)  On November 16, 2022, Plaintiff submitted a healthcare kite asking "why have the medical kites dated for the 13th not be[en] responded to," and he "never got a response to that one either."  (*Id.*)

Thereafter, on November 18, 2022, Plaintiff submitted another healthcare kite, noting that when he was incarcerated at MRF, a non-party doctor had informed him that he was scheduled for a CT scan, "but it was never done."  (*Id.*)  Defendant Cannon responded to Plaintiff's November 18, 2022, kite, indicating that "a CT scan was requested but never scheduled so that person misspoke, and it was denied for [Plaintiff] to have the CT scan due to not having enough information to back the approval."  (*Id.*)  Defendant Cannon further stated: "if you feel you still need this scan, please send a kite saying why and it will be addressed."  (*Id.*)

On November 19, 2022, Plaintiff submitted two healthcare kites.  (*Id.*, PageID.9.)  In one of the healthcare kites, Plaintiff stated that he had been "asking to be called out for a month and a half about pain throughout [his] body, mainly joints, [and] medical keeps using spin tactics to dissuade [him] from pursuing some type of pain management, [and] as a result [he] lay[s] in [his] cell 24 hours a day in pain." (*Id.*)  In the other November 19, 2022, healthcare kite, Plaintiff noted: "[Defendant] Jones said I have to be seen three times before I can see [a] doctor.  Well I have kited multiple times about being in pain and no one has tried to call me out . . . ."  (*Id.*)

On November 21, 2022, Plaintiff was "seen [by] [an unnamed, non-party] nurse . . . and [the nurse] did address concerns of pain in [his] joints and spine." (*Id.*) Plaintiff also addressed concerns regarding issues with his digestion, and he was advised to "increase [his] water intake . . . [and] not eat greasy and spicy foods." (*Id.*) Plaintiff alleges that he received a response to one of his healthcare kites on November 23, 2022, which stated that Plaintiff had not reported any pain during the November 21, 2022, appointment. (*Id.*)

On December 15, 2022, Plaintiff submitted a healthcare kite indicating that he had "been doing the packet of exercise given to [him] on 11-21-22, and the pain in [his] spine and fingers and shoulders [wa]s just getting worse." (*Id.*) In the kite, Plaintiff asked: "So what is your next remedy for this?" (*Id.*) Defendant Jones responded to Plaintiff's kite on December 16, 2022, stating that Plaintiff was "scheduled with the [medical provider] in the near future." (*Id.*, PageID.10.)

On January 7, 2023, Plaintiff submitted another healthcare kite, noting that he had been seen by the medical provider, non-party Leonie Mukarurinda, "last week . . . and she still refused to get [him] a proper evaluation to see what the issue is with the pain in [his] spine and fingers and shoulders." (*Id.*) That same day, Defendant Stamper responded to Plaintiff's healthcare kite, indicating that "another provider will review this request and we will keep you posted." (*Id.*) Plaintiff states that he "was never seen by another provider." (*Id.*)

On February 27, 2023, Plaintiff submitted a healthcare kite, "stating: 'I have stopped taking Motrin because it is making my stomach hurt. So now the pain in my back is so bad I can't stand up straight. I have done all you recommend and am suffering greatly. Why do you constantly spin me. I've begged for help repeatedly.'" (*Id.*) The next day, Defendant Fosburg responded to Plaintiff's kite, indicating that Plaintiff was scheduled for an "appointment . . . with nursing." (*Id.*)

On March 1, 2023, Plaintiff submitted a healthcare kite asking about "the status for getting [him] evaluated for [his] back issues." (*Id.*) Non-party Nurse Fletcher[5] responded to Plaintiff's kite on March 2, 2023, indicating that an appointment had already been scheduled for this issue, and that "if [Plaintiff] fe[lt] [he could] not wait for [the] scheduled appointment, [he] need[ed] to have [his] officers contact healthcare." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment and state law. (*See id.*, PageID.4–5.) Plaintiff seeks a declaratory judgment and monetary damages. (*Id.*, PageID.13.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

---

[5] When listing his claims, Plaintiff indicates that one of his claims is against Nurse Fletcher; however, Plaintiff did not list Fletcher in the case caption or in the list of Defendants in this suit. (*See* Compl., ECF No. 1, PageID.1, 2.) As such, the Court considers Nurse Fletcher to be a non-party to this suit.

9

U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities.  (Compl., ECF No. 1, PageID.2.)  A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

### 1.    Defendants Employed by the MDOC

As to any Defendants employed by the MDOC, Plaintiff's official capacity claims against these Defendants are equivalent to claims against the MDOC.

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages and a declaratory judgment. (Compl., ECF No. 1, PageID.13.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95 (1983)

(addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).  A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.  *Lyons*, 461 U.S. at 102.  In the present action, Plaintiff does not allege the existence of an official policy or practice, and Plaintiff's allegations relate solely to past harm, not future risk of harm.  Therefore, Plaintiff does not seek relief properly characterized as prospective.  *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against any Defendants employed by the MDOC in their official capacities upon which relief can be granted, and his official capacity claims against any Defendants employed by the MDOC will be dismissed for failure to state a claim.

### 2. Defendants Employed by a Prison Medical Provider that Contracts With the State

With respect to any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claims are equivalent to a suit against the private entity.  A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).  The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983.  *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended

to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne*

*Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff fails to allege that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of the private entity, Plaintiff's official capacity claims against any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates will be dismissed.

### B.    Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights by denying or delaying his receipt of medical care for his back pain and other related pain. (*See* Compl., ECF No. 1, PageID.4–5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need,

since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  The prisoner

must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

Here, Plaintiff alleges that he had significant back pain, as well as other joint pain, which impacted his mobility, and that at some point in the past he was treated for sciatica.  (*See* Compl., ECF No. 1, PageID.6–10.)  At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2.    Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—although Plaintiff has not proven his claims, the Court will not dismiss Plaintiff's Eighth Amendment medical care claims against Defendants McIntyre, Bartlett, and Stamper at this time.  (*See generally* Compl., ECF No. 1 (alleging that these Defendants received medical kites describing Plaintiff's current symptoms and that each Defendant did not take further action, such as referring Plaintiff for a medical appointment).)

However, as explained below, the Court will dismiss Plaintiff's Eighth Amendment medical care claims against Defendants Cannon, Jones, and Fosburg. First, as to Defendant Cannon, Plaintiff alleges that Defendant Cannon responded to a healthcare kite that Plaintiff submitted on November 18, 2022, in which Plaintiff had noted that when he was incarcerated at MRF, a non-party doctor had informed him that he was scheduled for a CT scan, "but it was never done." (*Id.*, PageID.8.) In Defendant Cannon's response, Cannon stated that "a CT scan was requested but never scheduled so that person misspoke, and it was denied for [Plaintiff] to have the CT scan due to not having enough information to back the approval." (*Id.*) Defendant Cannon further stated: "if you feel you still need this scan, please send a kite saying why and it will be addressed." (*Id.*)  Plaintiff does not allege that his November 18, 2022, healthcare kite had any information about his current symptoms; instead, Plaintiff alleges only that he noted that he believed he had been scheduled for a CT scan at MRF.  (*See id.*)  Under these circumstances, Plaintiff's allegations are insufficient to show that Defendant Cannon knew about Plaintiff's current medical needs when Cannon responded to Plaintiff's healthcare kite, let alone that Cannon knew of his medical needs and disregarded them, because Plaintiff does not allege that he included any information about his current symptoms in his healthcare kite.

Second, with respect to Defendant Jones, Plaintiff alleges that at some unspecified time, Defendant Jones "said [Plaintiff] ha[d] to be seen three times before [he could] see [a] doctor," and that later, in response to Plaintiff's December 15, 2022, healthcare kite regarding Plaintiff's pain, Defendant Jones advised Plaintiff that

Jones had scheduled Plaintiff for an appointment "with the [medical provider] in the near future." (*Id.*, PageID.8, 10.)  Thereafter, Plaintiff had an appointment with the medical provider at the end of December 2022 or the beginning of January 2023. (*See id.*, PageID.10 (reporting in a healthcare kite submitted on January 7, 2023, that Plaintiff had an appointment with the medical provider "last week").)  As an initial matter, as to Plaintiff's allegation that Defendant Jones told Plaintiff that he "ha[d] to be seen three times before [he could] see [a] doctor," this allegation on its own is insufficient to show that Defendant Jones acted with deliberate indifference. (*Id.*, PageID.8.)  Although Plaintiff apparently preferred to see a doctor, Plaintiff does not allege that Defendant Jones prevented him from seeing other medical personnel.  Indeed, in response to Plaintiff's medical kite describing his medical concerns, Defendant Jones scheduled Plaintiff to see the medical provider.  Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendant Jones disregarded Plaintiff's serious medical needs.

Finally, as to Defendant Fosburg, Plaintiff alleges that he submitted a healthcare kite on February 27, 2023, "stating: 'I have stopped taking Motrin because it is making my stomach hurt. So now the pain in my back is so bad I can't stand up straight. I have done all you recommend and am suffering greatly. Why do you constantly spin me. I've begged for help repeatedly.'" (*Id.*)  Defendant Fosburg responded to Plaintiff's kite the following day, indicating that Fosburg had scheduled a nursing appointment for Plaintiff. (*Id.*)  When Plaintiff submitted a healthcare kite on March 1, 2023, asking if he had in fact been scheduled for a medical appointment,

a non-party nurse advised Plaintiff that he "already ha[d] an appointment scheduled." (*Id.*)  Under these circumstances, Plaintiff's allegations do not show deliberate indifference by Defendant Fosburg; instead, Plaintiff's allegations show that Defendant Fosburg was responsive to Plaintiff's medical concerns and scheduled a nursing appointment for Plaintiff.  (*See id.*)[6]

Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Cannon, Jones, and Fosburg for failure to state a claim.  At this time, the Court will not dismiss Plaintiff's Eighth Amendment medical care claims against Defendants McIntyre, Bartlett, and Stamper.

### C.    State Law Claims

Plaintiff implies that in addition to his federal claims, he is bringing state law claims.  (*See, e.g.*, Compl., ECF No. 1, PageID.4–5 (referencing "medical malpractice").)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress

---

[6] When setting forth his claims for relief, Plaintiff contends that on February 28, 2023, Defendant Fosburg "failed/refused to schedule an appointment with a doctor" (Compl., ECF No. 1, PageID.5); however, the factual allegations in the body of the complaint show that even if Defendant Fosburg did not schedule Plaintiff for an appointment *with a doctor* on that date, Defendant Fosburg scheduled Plaintiff for a *nursing* appointment. Plaintiff may have preferred to have an appointment with a doctor, but Plaintiff's preference is insufficient to show that Defendant Fosburg acted with deliberate indifference.

for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).  Here, Plaintiff's federal claims against Defendants Cannon, Jones, and Fosburg will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.  Because Plaintiff continues to have pending federal claims against Defendants McIntyre, Bartlett, and Stamper, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having conducted the review required by the PLRA, Plaintiff's federal claims against Defendants Cannon, Jones, and Fosburg will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims against Defendants Cannon, Jones, and Fosburg will be dismissed without prejudice.  The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against remaining Defendants McIntyre, Bartlett, and Stamper.

Plaintiff's individual capacity Eighth Amendment medical care claims against Defendants McIntyre, Bartlett, and Stamper remain in the case.

An order consistent with this opinion will be entered.


Dated:  April 10, 2025                      /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge